UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| MICHAEL CURTIS, | Case No. 2:21-cv-02250-JAD-EJY |
|---|---|
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION**<br>RE:  ECF No. 30 |
| STATE OF NEVADA, *et al.*, | |
| Defendants. | |

Pending before the Court is Plaintiff's Motion to Show Cause for a Preliminary Injunction and a Temporary Restraining Order (the "Motion").[1] The Court reviewed the Motion, Defendants' Opposition, and Plaintiff's Reply.[2]

**I.   Background**.

A.   <u>Plaintiff's Motion</u>.

Plaintiff is incarcerated in High Desert State Prison ("HDSP" or the "Prison") and sues four HDSP officials alleging violation of his rights protected under the First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA").[3] Plaintiff, who is an Asatru religious practitioner,[4] seeks an injunction requiring Defendants to provide him with a Common Fare diet based on his sincerely held spiritual and religious beliefs.[5] Plaintiff states he "collected several traditional Asatru texts and is an avid practitioner" of Asatru, which, like many other faiths, has dietary requirements that govern what he eats and how his food must be prepared.[6] Plaintiff submits the "dietary traditions and preparation requirements of his faith" are described in two Asatru texts—"Our Truth" and "The Nature of Asatru."[7] Plaintiff further submits the preparation

---

[1]   ECF No. 30.
[2]   ECF Nos. 41 and 46.
[3]   ECF No. 1-1, 4.
[4]   Defendants do not dispute that Asatru is a Nevada Department of Corrections' ("NDOC") recognized religious faith group. *See* ECF Nos. 30 at 33, 34; 41 *generally*.
[5]   There is no dispute that Plaintiff completed the Nevada Department of Corrections ("NDOC") Faith Group Affiliation Declaration Form attesting to his Asatru affiliation in January 2019. ECF No. 30 at 24. There is no argument offered suggesting Plaintiff changed this affiliation since submitting the Form.
[6]   *Id*. 30 at 6.
[7]   *Id*. at 7.

1

and slaughter of animals must be in accordance with Judiasm's Kosher law of Shechita. *Id*.[8] Plaintiff cites NDOC's Administrative Regulation ("AR") 814, which states in pertinent part: "The Common Fare Menu intends to accommodate inmates whose sincere religious/spiritual dietary needs cannot be met by the Master Menu without prohibiting their free exercise of or without substantially burdening their sincere religious/spiritual exercise in a manner that is prohibited by controlling legal authority."[9]

Plaintiff submitted his first NDOC Religious Diet Accommodation Request (the "Accommodation Request") on October 3, 2019, which was denied two weeks later on October 17, 2019.[10] Specifically, on the last page of Plaintiff's Accommodation Request is a section signed by an HDSP Chaplain after which the Chaplain wrote: "Inmate does not qualify, denial sent for Asatru faith from PRT and is stapled to application."[11] The memo was written to another prisoner based on that prisoner's apparent request for a diet other than the main menu diet.[12] In the memo denying Plaintiff's Accommodation Request now deceased HDSP Chaplain Synder wrote: "Your own explanation suggests that the meatless alternative diet is a more appropriate diet."[13] The memo was cc'd to Chaplain Calderin.[14] A review of Plaintiff's Accommodation Request shows Plaintiff offers no explanation that seeks a meatless diet.[15]

Plaintiff demonstrates his belief that Asatru is an "earth-based" religion requiring the Common Fare diet, which is almost identical to those beliefs of another inmate who is Native-American and whose request for the Common Fare diet was similarly initially denied by Chaplain Calderin.[16] Plaintiff submits the denial of his Accommodation Request was done "without

---

[8] *Id*. In this discussion Plaintiff cites "*Stockmieir v. Green*, Case No. 10 EW 00023 1B July 1, 2019, pg. 2" for this proposition. The Court searched for this reference, but could not locate anything approaching this cite.
[9] *Id*. *citing* AR 814 at 1 § 814.02.1.
[10] ECF 30 at 26-31. There is no dispute that Plaintiff's submission of his Accommodation Request complied with the Administrative Regulations requiring the same. *See* AR 814.03.1. The Accommodation Request cites several religious texts and the Common Fare diet, which is served to inmates identifying with Judaism, Islam, and other faiths. ECF No. 30 at 26-27, 51.
[11] *Id*. at 29.
[12] *Id*. at 31. There is no dispute that the denial memo was written to another prisoner. *See* ECF No. 30 at 12 for Plaintiff's explanation, to which Defendants do not respond. *Compare* ECF No. 41
[13] *Id*. at 31.
[14] *Id*.
[15] *Id*. at 26-29.
[16] *See, e.g., id*. at 10 *citing King v. Calderin*, Case No. 2:21-cv-01452-CDS-BNW, 2023 WL 3182656 (D. Nev. May 1, 2023) (Order Granting Motion for Preliminary Injunctions); 37, 42.

conducting the religious/spiritual belief dietary interview of inmate," which is required by AR 814.03.2.[17] Defendants' Opposition to Plaintiff's Motion is silent in response to this contention.[18] This NDOC AR states, in pertinent part: "The Chaplain/designee shall conduct a religious/spiritual belief diet accommodation interview of the inmate as soon as reasonably practicable to be considered for the Common Fare program."[19]

Plaintiff says he "holds his religious beliefs close to his heart and[,] in the prison environment in which he finds himself[,] these beliefs are a literal lifeline which tether him to his sanity and ability to cope with the situation."[20] Plaintiff returns to the memo denying his Accommodation Request pointing not only to the Chaplain's reference to a meatless diet, which Plaintiff never mentions, but also to an explanation that Plaintiff never provided.[21] Plaintiff argues the denial was based on someone else's essay of sincerity, not his essay attesting to the sincerity of his beliefs.[22]

Plaintiff's grievances are attached to his Motion showing all were denied.[23] Plaintiff also cites two declarations attached to his Motion.[24] The first declaration was written by a Buddhist inmate who states (1) Chaplain Calderin denied his initial accommodation request without conducting the "sincerity of belief" interview; (2) he submitted two more requests, and (3) when finally interviewed by Chaplain Calderin, the Chaplain told him he was "never going to get on the [C]ommon [F]are diet" because "the … Faith Group Overview" does not list Buddhists as having any special dietary needs.[25] The second declarant states he follows the Asatru faith, an "earth-based" religion, his request for a Common Fare diet was denied three times by Chaplain Calderin, and that Chaplain Calderin did not interview him on any occasion before denying his request.[26]

---

[17] ECF No. 30 at 11.
[18] See ECF No. 41 generally.
[19] AR 814.03.2.
[20] ECF No. 30 at 11.
[21] Id. at 12.
[22] Id.
[23] Id. at 13. A review of the grievances show that at least two refer to the NDOC Faith Group Overview stating that "[n]o special dietary standard exists" for the Asatru faith. Id. at 34, 36, 39. The last response refers to federal law requiring the humane slaughtering of animals that, the grievance responder states "this would mean that it meets the requirement that you stated your religion has." Id. at 41.
[24] Id. at 45-49
[25] Id. at 45.
[26] Id. at 48.

In addition to pointing the Court to the decision in *King v. Calderin* (*see infra* at n.16), Plaintiff cites the 2017 *Howard v. Connett* District of Nevada decision involving Chaplain Calderin.[27] In *Howard*, the court upheld a jury verdict and punitive damages against Chaplain Calderin who denied a Muslim inmate's requests to attend religious services and "recklessly yet unequivocally ***lied*** in an official grievance report."[28] Plaintiff says he has experienced much the same treatment from Chaplain Calderin as is described in *Howard*.[29]

Plaintiff asserts he is entitled to injunctive relief because he is likely to prevail on his RLUIPA claim.[30] Plaintiff submits he has provided evidence of the sincerity of his religious beliefs that include the requirement for a Common Fare diet through his Accommodation Request, grievances, Complaint, and instant Motion.[31] Plaintiff says his efforts have spanned almost five years during which he has attempted to convince Defendants that he is entitled to Common Fare meals.[32] Plaintiff says the denial of Common Fare meals places a substantial burden on his free exercise of religion without any compelling reason to do so.[33]

Plaintiff supports his Motion and the illegitimate denial of his Accommodation Requestion by offering a list of other inmates who are Asatru members receiving Common Fare meals.[34] Plaintiff further supports his Motion and argument with an Accommodation Request by inmate Jeffrey Hilliar who, in February 2019, sought and was granted a Common Fare diet based on his Asatru faith.[35] Plaintiff explains that the denial of his request for a Common Fare diet has created difficulty for him remaining on "the list to get to the Asatru worship grounds," and being forced to eat the NDOC main menu that is inconsistent with his religious beliefs.[36] Plaintiff correctly

---

[27] *Id*. at 14 *citing Howard v. Connett*, Case No. 2:11–cv–01402–RFB–GWF, 2017 WL 4682300 (D. Nev. Oct. 17, 2017).
[28] *Howard*, 2017 WL 4682300, at *8 (emphasis in original). The court also noted Chaplain Calderin's "nonchalance about lying in an official report, his apparent indifference to his actions, and … anger for having to respond to Plaintiff's claims" as supporting the punitive damages finding. *Id*.
[29] ECF No. 30 at 14.
[30] *Id*. at 15.
[31] *Id*. at 16.
[32] *Id*.
[33] *Id*.
[34] *Id*. at 16 *citing* 51-53.
[35] *Id*. at 55-64.
[36] *Id*. at 18.

4

points out that no denial of his grievances by Chaplain Calderin or Brian Williams questioned the sincerity of his religious beliefs.[37]

Plaintiff argues that just because NDOC has determined Asatru has no dietary requirements does not make the decision an accurate one for the religion generally or more specifically for him.[38] Plaintiff says the HDSP Chaplain was dishonest when responding to his Accommodation Requests as demonstrated by the memo attached to the initial Accommodation Request denial, written to another inmate and referring to a meatless diet that Plaintiff never mentioned.[39] Plaintiff says his irreparable harm derives from being forced to eat food that violates the basic tenets of his earth-based religion and HDSP's "obvious pattern … [of] intentional deprivation" of Plaintiff's right to freely exercise his religion.[40]

### B. Defendants' Opposition.

Defendants assert Plaintiff "fails to elaborate on what exactly the [religious] texts [on which he relies] say or what he believes constitutes the humane treatment and slaughter of animals" despite claiming Kosher law is the closest analogy to his faith.[41] Citing to the texts on which Defendants say Plaintiff relies, Defendants argue these annals contain a wide ranging discussion of animal sacrifice, but never discuss "any *requirements* for the *general* slaughter and consumption of meat."[42] Defendants then repeat, unnecessarily, some of the methods for slaughtering animals, and ultimately admits that one of the texts likens one method to what is prescribed by Kosher law.[43]

Defendants next launch into a discussion of federal law pertaining to the slaughter of livestock, arguing that (1) because the United States Department of Agriculture ("USDA") requires humane methods of doing so, (2) the United States Food Safety and Inspection Service ("FSIS") promulgated regulations regarding the inspection of slaughterhouses, and (3) HDSP's main menu meat supplier (Aramark) obtained certification from its individual suppliers showing their meat

---

[37] *Id*. *See also id*. at 36-43.
[38] *Id*. at 18.
[39] *Id*. at 31.
[40] *Id*. at 21.
[41] ECF No. 41 at 2.
[42] *Id*. at 3 (emphasis in original).
[43] *Id*.

5

products are subject to USDA and FSIS inspection, the main menu meat products served to inmates are "humanely slaughtered" and consistent with Plaintiff's sincerely held religious beliefs.[44] Defendants conclude Plaintiff is not likely to succeed on the merits of his claim.[45] Defendants dispose of Plaintiff's citations to *King v. Calderin* in a single sentence contending not only does Plaintiff's claim require individualized analysis, but the arguments regarding the USDA and FSIS were not addressed in *King*.[46]

Defendants sum up Plaintiff's lack of irreparable harm by repeating their argument that the meat Plaintiff is served through the main menu is from animals that are humanely treated and slaughtered as demonstrated by the USDA's FSIS ability to inspect the facilities from which the meat comes.[47] Defendants argue the balance of the equities and public interest favor denial of Plaintiff's injunction because Plaintiff gets no added benefit from a "Common Fare" diet as the animals are humanely slaughtered under federal law while NDOC and the public have an interest is restricting access to the Common Fare diet because of its cost.[48]

C.   Plaintiff's Reply.

Plaintiff counters Defendants' USDA argument by pointing out that not one product label provided by Defendants includes a Kosher certification thus demonstrating the main menu meat fails to satisfy his sincerely health beliefs that the meat he consumes must be humanely treated and slaughtered in accordance with Kosher law.[49] Plaintiff reiterates that he is registered as an Asatru practitioner and his Accommodation Request provides the basis for his Common Fare request.[50] Plaintiff says he has done all that is required to demonstrate his sincerely held beliefs and that other Asatru practitioners have been approved for the Common Fare diet establishing there is no legitimate basis for the denial of his request.[51]

---

[44]  *Id*. at 4-6, 8.
[45]  *Id*. at 8. Defendants further support their contentions by arguing Plaintiff has not presented any evidence that the meat he has eaten on the main menu was not humanely treated and slaughtered in accordance with Plaintiff's religious belief. *Id*.
[46]  *Id*. Defendants do not address the decision in *Howard* issued by the District of Nevada in 2017.
[47]  *Id*. at 9.
[48]  *Id*. at 10.
[49]  ECF No. 46 at 2.
[50]  *Id*. at 4.
[51]  *Id*. at 4-5.

6

1   After discussing the standard applicable to preliminary injunctive relief, Plaintiff argues he
2   has raised a colorable claim that his First Amendment rights have been and continue to be infringed
3   upon thereby demonstrating he has suffered and will continue to suffer irreparable harm in the
4   absence of an injunction.[52]  Plaintiff cites balance of the hardship stating the infringement of his
5   First Amendment rights—a great harm—renders this factor in his favor.[53]  The public interest is
6   served by ensuring the protection of First Amendment rights of all citizens, including prisoners.[54]

**II.   Discussion**.

   A.   <u>Applicable Legal Standard</u>.

The parties to this dispute agree that the standard applicable to Plaintiff's Motion for injunctive relief was stated in *Winter v. Nat. Res. Def. Council, Inc.*[55]  "A plaintiff seeking a preliminary injunction must establish he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[56]  Further, however, under Ninth Circuit law, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied."[57]

Because this case arises in the context of an inmate seeking prospective injunctive relief, the Court must also consider the Prison Litigation Reform Act of 1995 ("PLRA").[58]  The PLRA sets the standards for courts considering prospective injunctive relief in the prison context.[59]  "The Act instructs that a 'court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal

---

[52]   *Id*. at 7.
[53]   *Id*.
[54]   *Id*. at 8 citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d. 1127, 1138 (9th Cir. 2011) (additional citation omitted); *Saintal v. Foster*, Case No. 2:11-cv-00445-MMD-PAL, 2012 WL 5180738, at *10 (D. Nev. Oct. 17, 2012).
[55]   555 U.S. 7 (2008).
[56]   *Id*. at 20 (cleaned up, internal citations removed).
[57]   *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal citation and quote marks removed, emphasis in original).
[58]   18 U.S.C. § 3626.
[59]   *Id*.

right.'"[60] "The PLRA 'mean[s] just what it says—before granting prospective injunctive relief, the trial court must make the findings the PLRA mandates.'"[61] The PLRA further states: "The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief …."[62]

"Under [the] RLUIPA, a government may not impose a substantial burden on the religious exercise of a confined person unless the government establishes that the burden furthers a 'compelling governmental interest' and does so by the 'least restrictive means.'"[63] The "RLUIPA must be construed broadly in favor of protecting an inmate's right to exercise his religious beliefs."[64] Plaintiff "bears the burden of establishing … [the] RLUIPA has been violated and … his religious exercise has been substantially burdened[; whereas,] [t]he government … bears the burden of proving … the substantial burden on the inmate's religious practices both furthers a compelling governmental interest and is the least restrictive means of doing so."[65]

      B.    <u>Plaintiff Demonstrates he is Likely to Succeed on the Merits or, at a Minimum, Demonstrate there are Serious Questions Going to the Merits of his Claim</u>.

Plaintiff demonstrates he is likely to succeed on the merits of his claims. Inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[66] To prevail on a First Amendment free exercise claim, Plaintiff must show that Defendants burdened his practice of religion by preventing him from engaging in a sincerely held religious belief and Defendants did so without any justification reasonably related to a legitimate penological interest.[67] The RLUIPA, like First Amendment analysis, "bars inquiry into whether a particular belief or practice is central to a prisoner's religion" while allowing "inquiry into the sincerity of a prisoner's professed religiosity."[68]

---

[60] *Armstrong v. Newsom*, 58 F.4th 1283, 1293 (9th Cir. 2023) *citing* 18 U.S.C. § 3626(a)(1)(A).
[61] *Id*. quoting *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998).
[62] 18 U.S.C. § 3626(a)(1)(C)(2).
[63] *Isbell v. Ryan*, Case No. CV 11-0391-PHX-JAT (JFM), 2011 WL 6050337, at *2 (D. Ariz. Dec. 6, 2011) *quoting*, in part, 42 U.S.C. § 2000cc-1(a)(1)-(2).
[64] *Id*. citing *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) *citing* 42 U.S.C. § 2000cc-3(g).
[65] *Id*. citing *Warsoldier*, 418 F.3d at 994-95, *citing* 42 U.S.C. § 2000cc-1(a) and 2(b).
[66] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted).
[67] *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).
[68] *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005); *Shakur*, 514 F.3d at 883 (finding, under a First Amendment analysis, the district court impermissibly focused on whether "consuming Halal meat is required of

The Court finds Defendants do not question whether Plaintiff's beliefs in the Asatru faith are sincerely held or that part of Plaintiff's sincerely held beliefs include that his faith requires he eat meat only if the animals are humanely treated and slaughtered in preparation for consumption. Perhaps Defendants remain silent as to the sincerity of Plaintiff's beliefs because Plaintiff's statements regarding his beliefs have not waivered since he first sought a Common Fare diet in October 2019.[69] In fact, Plaintiff stated his belief on multiple occasions as a request for "Common Fare, due to the proper humane treatment and slaughter of animals for meat," which he likens to Kosher law.[70]

Instead, Defendants characterize Plaintiff's requests as "fail[ing] to elaborate on what exactly the [Asatru] texts [on which he relies] say or what he believes constitutes the 'humane treatment and slaughter' of animals."[71] Again, Defendants assert this position while admitting Plaintiff repeatedly identifies the preparation of meat for consumption under the "requirements of Kosher law" is most closely analogous to his sincerely held beliefs that this preparation complies with the Asatru faith.[72]

Defendants are questioning whether consuming meat prepared in compliance with Kosher law is central to the Asatru faith. Defendants quote and challenge religious Asatru texts, their meaning and applicability to Plaintiff, while repeatedly arguing those texts do not require Asatru practitioners consume only Kosher meat.[73] This, as was true in *Shakur*, is an impermissible inquiry.[74] It is the sincerity of Plaintiff's beliefs (which are not challenged) and not what is a

---

Muslims as a central tenet of Islam, rather than on whether Shakur sincerely believes eating kosher meat is consistent with his faith.").
[69] ECF No. 30 at 29.
[70] *Id.* at 27, 28 referring to Common Fare—the diet provided to inmates who practice Judaism and Islam and ascribe to Kosher law (*see id.* at 51 showing HDSP Pre-Breakfast Report identifying inmates identifying as Jewish or Muslim receiving the Common Fare Kosher diet); 37 (Plaintiff's Informal Grievance stating he is a member of the Asatru faith that requires "a dietary requirement that animals be slaughtered humanely, in a fashion exactly like that prescribed by … Kosher law"); 42-43 (Plaintiff's Second Level Grievance stating: "I sincerely believe that I am required to maintain a religious diet. I sincerely believe I am required to maintain a diet that is consistent with Common Fare"; and, after sighting two Asatru texts, "[b]oth texts state the requirement for humane treatment and slaughter of animals, which mimic the Kosher requirements for animal treatment and slaughter").
[71] ECF No. 41 at 2.
[72] *Id.*
[73] *Id.* at 2-3 (discussing at length the excerpts from *Our Troth* Vol. 2: *Living the Troth*, described as "complied by Kveldulf Gundarsson.").
[74] *Shakur*, 514 F.3d at 883.

9

central tenet of Asatru that is at issue. The Court finds Plaintiff meets his burden of demonstrating his sincerely held beliefs in Asatru and its requirement that he consume meat prepared for the Common Fare diet or, at a minimum, demonstrates a serious question going to the merits of his claim.[75]

The Court further finds Plaintiff demonstrates that denying him the Common Fare diet places a substantial burden on his freedom to exercise his religion. A substantial burden is one that imposes "a significantly great[er] restriction or onus upon" the exercise of one's religion.[76] Courts "have little difficulty … concluding that an outright ban on a particular religious exercise is a substantial burden on that religious exercise."[77] Defendants contend Plaintiff cannot meet the substantial burden requirement because "[t]he meat … [he] has been receiving on the main menu is inspected and approved by the USDA's FSIS …."[78] But this argument presupposes that USDA, FSIS standards are equivalent to Kosher standards Plaintiff repeatedly, and unwaveringly, states is the standard that is most closely aligned with his Asatru faith. That Defendants disagree with Plaintiff's statements regarding what the Asatru faith requires—that is, questions whether Plaintiff's sincerely held belief is a central tenet of Asatru—is not the inquiry being made.[79]

Defendants repeatedly denied Plaintiff's request for Common Fare forcing him to eat food not compliant with unchallenged sincerely held religious beliefs in the absence of a compelling penological interest for doing so. First, the Court cannot help but refer to the fact that Defendants granted the request for a Common Fare diet by another inmate-Asatru practitioner who based his request on his belief that the meat he consumes must be slaughtered "according to Kosher law."[80] This inmate's request was made on February 21, 2019, and approved on February 28, 2019.[81] Defendants offer no explanation for why one inmate's request for Common Fare based on sincerely held beliefs in the Asatru faith and customs was approved in February 2019, while

---

[75] While the question of sincerity is one of fact, the Court must approach this question with a "light touch, or judicial shyness." *Pasaye v. Dzurenda*, 375 F.Supp.3d 1159, 1167 (D. Nev. 2019) *citing Moussazadeh v. Tex. Dept. of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012) (further citation and internal quote marks omitted).
[76] *Walker v. Beard*, 789 F.3d 1125, 1135 (9th Cir. 2015) (internal citation omitted).
[77] *Greene v. Solano Cnty. Jail*, 513 F.3d 982, 988 (9th Cir. 2008) (internal citation omitted).
[78] ECF No. 41 at 8.
[79] *Cutter*, 544 U.S. at 725 n.13.
[80] ECF No. 30 at 57.
[81] *Id*.

Plaintiff's request based on the same faith and custom was repeatedly denied beginning in October 2019. Defendants are silent in response to this evidence.[82] While HDSP purchases meat products that Defendants show complies with USDA and FSIS inspection requirements,[83] these requirements did not change between February 2019, when HDSP approved the Asatru-inmate request for Common Fare, and October 2019 when it declined the same request by Plaintiff.

Indeed, if USDA and FSIS inspection and requirements are sufficient to establish the humane treatment and slaughter of animals, why is it that any prisoner would need Common Fare? Defendants do not address this issue. If USDA and FSIS humane treatment and slaughter of animals standards meet the requirements for the preparation of consumable meat in accordance to those who sincerely believe their religion requires they consume meat products prepared in accordance with Kosher standards, why would HDSP need Common Fare meals at all? Defendants do not address this question either.[84] Instead, Defendants split hairs over Plaintiff's failure to explain exactly what part of Kosher law he depends upon for his beliefs. Sincerely held beliefs do not depend on the content of religious texts.[85] In particular, the "RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"[86] This "means that RLUIPA protects not only practices deemed orthodox by some recognized religious organization, but also idiosyncratic practices—practices 'not compelled by, or central, to a [given] system of religious belief.'"[87]

Second, and equally important, is that the reason for denying Plaintiff's initial Accommodation Request was not based on a penological interest, but on a faulty premise that Plaintiff's supposed explanation (one he did not offer) for why he was seeking Common Fare suggested a meatless diet was more appropriate.[88] The reference to Plaintiff's supposed explanation was indisputably in a memo written in response to another inmate's request, not

---

[82] ECF No. 41.
[83] ECF No. 41-2.
[84] ECF No. 41.
[85] *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (analyzing First Amendment claim, which requires belief that "is religious in the [inmate]'s own scheme of things and is sincerely held").
[86] 42 U.S.C. § 2000cc-5(7)(A).
[87] *Jones v. Slade*, 23 F.4th 1124, 1141 (9th Cir. 2022) *quoting* 42 U.S.C. § 2000cc-5(7)(A).
[88] ECF No. 30 at 31

11

Plaintiff's request.[89] Defendants' response to Plaintiff's first grievance (his "Informal Grievance") refers to NDOC's Faith Overview Chart, which concludes Asatru has no special dietary standards.[90] That NDOC's Faith Overview Chart states that "no special dietary standard exists" for the Asatru faith was not, in and of itself, a sufficient basis on which to deny Plaintiff's Common Fare request. If this were a sufficient penological interest, why did HDSP grant the Common Fare request made by an inmate practicing Asatru in February 2019, but not to Plaintiff who made a request in October 2019? Finally, Defendants do not tie any penological interest to its USDA-FSIS argument. That is, Defendants do not demonstrate that by serving USDA-FSIS meat on its main menu they are serving a penological interest in denying Plaintiff's Common Fare request. This is Defendants' burden, which is not satisfied.

Plaintiff meets the first element of demonstrating injunctive relief is warranted and the RLUIPA's requirement that the relief requested—Plaintiff receiving a Common Fare diet going forward—is narrowly drawn and extends no further than necessary to correct the violation of Plaintiff's constitutional right to the free exercise of his religious beliefs.

      C.     <u>Plaintiff will Suffer Irreparable Harm without Injunctive Relief</u>.

Plaintiff correctly points to case law holding that when an alleged deprivation of a constitutional right is at issue, including the right to the free exercise of religion, "most courts hold … no further showing of irreparable injury is necessary."[91] In fact, "the Ninth Circuit has held that 'a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim.'"[92]

The right at issue is Plaintiff's right to the free exercise of his religion protect by the First Amendment to the United States Constitution—specifically, his right to consume food in compliance with his unchallenged sincerely held religious beliefs. Because the RLUIPA "expands on the First Amendment's protection of religious beliefs, this same reasoning applies to …

---

[89]    *Id*.
[90]    *Id*. at 34, 36.
[91]    *Pasaye*, 375 F.Supp.3d at 1170-71 (internal citation omitted); ECF No. 46 at 6-7 *citing*, *inter alia*, *Warsoldier*, 418 F.3d at 1001.
[92]    *Id*. at 1171 *citing Warsoldier*, 418 F.3d at 1001.

12

[Plaintiff's] statutory claim" and supports the finding of irreparable injury.[93]  In the absence of an injunction Plaintiff will necessarily be required to continue to consume meat in contravention of his sincerely held beliefs in what the Asatru faith requires.  Plaintiff establishes the irreparable injury required to warrant injunctive relief.

      D.    <u>The Balance of the Equities and Public Interest do not Outweigh the Hardship Plaintiff will Suffer in the Absence of an Injunction</u>.

The balance of the equities and public interest are merged into one question "when the government opposes a preliminary injunction."[94]  Nevertheless, as explained by the Ninth Circuit, "[t]he 'balance of equities' concerns the burdens or hardships to … [Plaintiff] compared with the burden on Defendants if an injunction is ordered."[95]  "The 'public interest' mostly concerns the injunction's 'impact on nonparties rather than parties.'"[96]

Defendants argue "there is no added benefit to … [Plaintiff's] practice of religion by placing him on the [C]ommon [F]are diet" because the "main menu diet consists of meat from animals subject to humane slaughter pursuant to federal law."[97]  Defendants further argue that the increased costs of $1.81 each day for Common Fare food (an additional $660 annually) for each inmate placed on this diet is a cost that will be borne by taxpayers.[98]

Plaintiff argues he will be "greatly harmed" in the absence of his ability to exercise his constitutionally protected free exercise of religion right.[99]  Plaintiff further argues "the public interest is served by the protection of the First Amendment rights of citizens even if they are prisoners."[100]  The Court agrees with Plaintiff.  There is no interest served by denying an individual, even a prisoner, his First Amendment freedom of religion rights in the absence of a compelling governmental interest, which has not been established by Defendants.

---

[93] *Id*.
[94] *Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021) (internal citation omitted).
[95] *Id*. citing *Winter*, 555 U.S. at 24-31.
[96] *Id*. quoting *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003) (further citation omitted).
[97] ECF No. 41 at 10.
[98] *Id*. at 10-11.
[99] ECF No. 46 at 7.
[100] *Id*. at 8 citing *Saintal*, 2012 WL 5180738, at *10.  *See also Ramirez v. Collier*, 595 U.S. 411, 432 (2022) ("the balance of equities and public interest" are served by "avoiding substantial burdens on … religious exercise, even while [individuals are] confined.").

### III.     Recommendation.

Based on the foregoing, IT IS HEREBY RECOMMENDED that Plaintiff's Motion to Show Cause for a Preliminary Injunction (ECF No. 30) be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiff's Motion for a Temporary Restraining Order be DENIED as moot.

IT IS FURTHER RECOMMENDED that Defendants be required to, no later than seven (7) days after the Court adopts this recommendation, provide Plaintiff the Common Fare diet.

Dated this 2nd day of January, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).