**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Michael Curtis,<br><br>    Plaintiff<br><br>v.<br><br>State of Nevada, et al.,<br><br>    Defendants | Case No.: 2:21-cv-02250-JAD-EJY<br><br>**Order Overruling Objection, Adopting Report and Recommendation, and Granting in Part Motion for Preliminary Injunction and Temporary Restraining Order**<br><br>[ECF Nos. 30, 50, 51] |

Pro se plaintiff Michael Curtis is an inmate at Nevada's High Desert State Prison. He practices Asatru, a Germanic and Scandinavian polytheistic religion that centers on nature and ancestry,[1] and he contends that a kosher diet—known at High Desert as the common-fare diet— is most consistent with Asatru's dietary traditions. After many requests to be placed on the common-fare diet and an equal number of denials, Curtis brings this civil-rights action against Nevada Department of Corrections (NDOC) and High Desert employees (collectively, High Desert) for violating his right to freely exercise his religion under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Curtis moves for a preliminary injunction and temporary restraining order to force High Desert to provide him with this special diet, arguing that he is likely to succeed on his RLUIPA claim because eating from the prison's main menu requires him to violate his sincerely held Asatru beliefs, placing a substantial burden on his ability to practice his religion.

---

[1] ECF No. 46 at 13–14.

The magistrate judge recommends that I grant Curtis's motion because his beliefs are sincere and remaining on the prison's main diet will substantially burden his free-exercise rights. High Desert objects that Curtis's RLUIPA claim is now moot because the prison placed him on the common-fare diet after the magistrate judge issued her findings.[2] It also contends that Asatru does not require its practitioners to consume kosher meat; it merely requires livestock to be slaughtered in an ethical and humane manner, a standard already prescribed by federal law.[3] Curtis has demonstrated that he can likely show that his beliefs are sincere and denying his meal request is a substantial burden on his ability to practice Asatru, while High Desert fails to demonstrate a compelling government interest in restricting his diet or provide assurances that Curtis will remain on the common-fare diet if I deny injunctive relief on mootness grounds. So I overrule High Desert's objection, adopt the magistrate judge's recommendation, and grant Curtis a narrowly tailored preliminary injunction that requires High Desert to keep him on the common-fare diet.[4]

## Background

Curtis follows the Asatru faith and, through his research and practice at High Desert, has discovered texts comparing Asatru dietary traditions to Jewish dietary laws.[5] He applied to be placed on the facility's common-fare diet, a menu comprised of kosher foods with preparation that complies with kosher law, but his request was denied by Chaplin Julio Calderin because he did not qualify.[6] He then submitted a religious-accommodation report to NDOC's religious-

---

[2] ECF No. 51 at 3.
[3] *Id*. at 4–5.
[4] I find these issues suitable for disposition without oral argument. *See* L.R. 78-1.
[5] ECF No. 46 at 11, 13–14.
[6] ECF No. 30 at 26–29 (religious-diet-accommodation request).

2

review team but was denied because "the meatless alternative diet is a more appropriate diet" for Asatru practitioners.[7]  He appealed these denials through the grievance process but was denied three more times because his current diet did not "hinder or stop [him] from participating in [his] [r]eligion,"[8] the Asatru faith has "no special dietary needs,"[9] and federal laws already "require humane slaughtering of animals" that satisfy Asatru's ethical-slaughter mores.[10]

Curtis filed this civil-rights action under 42 U.S.C. § 1983 against the State of Nevada, NDOC, and various current and former NDOC and High Desert employees for violating his free-exercise rights under the First Amendment and RLUIPA, his right to equal protection under the Fourteenth Amendment, various prison regulations, 28 U.S.C. § 242, and NRS § 41.0322.[11]  I screened his complaint and found a cognizable free-exercise claim and RLUIPA claim against High Desert's Chaplin Calderin and its Associate Warden Monique Hubbard-Pickett, NDOC Director Charles Daniels, NDOC Deputy Director Brian Williams, and former NDOC Deputy Director Kim Thomas, so I allowed those two claims to proceed.[12]

Curtis moves for a preliminary injunction and temporary restraining order, arguing that he states a colorable RLUIPA claim, he is suffering irreparable harm by remaining on the prison's main diet, the balance of equities tips in his favor, and injunctive relief is in the public interest.[13]  He contends that denying him the common-fare diet places a substantial burden on his

---

[7] *Id*. at 31 (religious-review team reply to request for common-fare diet).
[8] *Id*. at 36 (informal-inmate-grievance report).
[9] *Id*. at 39 (first-level-inmate-grievance report).
[10] *Id*. at 41 (second-level-inmate-grievance report).
[11] ECF No. 1-1.  Curtis was also seeking to hold High Desert's warden and NDOC director liable through a supervisory-liability claim.
[12] ECF No. 3.
[13] ECF No. 30; ECF No. 46.

religious freedom to practice Asatru without any compelling government interest in restricting his diet.[14] High Desert responds that the prison's main menu contains food that is consistent with Curtis's Asatru beliefs, so he is not substantially burdened by this diet and cannot otherwise satisfy the factors necessary for injunctive relief.[15] The magistrate judge recommends that High Desert place Curtis on the common-fare diet because his beliefs are sincere and denying him a kosher diet substantially burdens his freedom to exercise his religion.[16]

After the magistrate judge issued her findings, High Desert approved Curtis for the common-fare diet while simultaneously objecting to the magistrate judge's recommendation, arguing that its action renders Curtis's request for injunctive relief under RLUIPA moot because the prison has already provided the relief he is seeking.[17] It adds that if Curtis's request is not moot, it's meritless because Asatru requires only the consumption of ethically slaughtered meat, and the prison's main menu complies with that standard, so Curtis is not burdened by eating from the regular menu.[18]

## Discussion

A district court reviews objections to a magistrate judge's proposed findings and recommendations *de novo*.[19] "The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with

---

[14] ECF No. 30 at 16.
[15] ECF No. 41 at 8.
[16] ECF No. 50 at 9–10.
[17] *Id*. at 3.
[18] *Id*. at 3–5.
[19] Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(B); Local Rule IB 3-2(b) (requiring a district judge to review de novo only the portions of a report and recommendation addressing a case-dispositive issue that a party objects to).

instructions."[20] The standard of review applied to the unobjected-to portions of the report and recommendation is left to the district judge's discretion.[21] Local Rule IB 3-2(b) requires *de novo* consideration of specific objections only.[22]

The magistrate judge recommends that I grant Curtis's motion for a preliminary injunction. Injunctive relief, whether temporary or permanent,[23] is an "extraordinary" remedy "never awarded as of right."[24] The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that, to obtain an injunction, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable injury in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[25] And "in any civil action with respect to prison conditions," the Prisoner Litigation Reform Act requires courts to ensure that any injunctive relief issued is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."[26] Curtis has demonstrated that the *Winter* factors favor injunctive relief in his case. And although High Desert has already placed him on the common-fare diet, it hasn't shown that it will keep him there, so Curtis's claim and need for this relief is not moot.

---

[20] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121–22 (9th Cir. 2003).

[21] *Id*.

[22] *See* Nevada L.R. IB 3-2(b) (requiring *de novo* consideration of specific objections only).

[23] The legal standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[25] *Id.* at 20.

[26] 18 U.S.C. § 3626.

### A. High Desert fails to ensure that it will not remove Curtis from the common-fare diet absent an order.

A case is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[27] A party's voluntary change in conduct does not automatically render a case moot, as the party may decide to resume its conduct after the case is dismissed.[28] The Ninth Circuit "presume[s] that a government entity is acting in good faith when it changes its policy, but when the [g]overnment asserts mootness based on such a change, it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again."[29]

High Desert has not carried this heavy burden. It argues that because Curtis was placed on the common-fare diet earlier this year, there is no remedy currently needed for him.[30] Although High Desert did voluntarily change Curtis's diet, its conduct wasn't memorialized in a prison-wide policy allowing Asatru practitioners on the common-fare diet without a trip through the court system. Instead, it appears this change was made at the behest of High Desert's counsel in an effort to comply with the magistrate judge's recommendation.[31] High Desert is effectively free to place Curtis back on the prison's main diet at any time and provides no assurances that it won't do exactly that. So because High Desert's change lacks the indicia of

---

[27] *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013)).

[28] *Id*. (citing *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)).

[29] *Id*. (citing *White v. Lee*, 227 F.3d 1214, 1243–44 (9th Cir. 2000) (cleaned up).

[30] ECF No. 51 at 3.

[31] *Id*. at 5.

permanence, permitting Curtis's common-fare designation to be "easily abandoned or altered in the future," his motion is not moot.[32]

**B.    Curtis has shown a likelihood of success on the merits of his RLUIPA claim.**

Curtis has also shown that his request for injunctive relief is meritorious. Congress enacted RLUIPA "in order to provide greater protection for religious exercise than is available under the First Amendment."[33] Section 3 of the act applies to inmates in state or local custody,[34] forbidding those governments from "impos[ing] a substantial burden on the religious exercise" of inmates, "even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."[35] "RLUIPA protects any exercise of religion, whether or not compelled by, or central to, a system of religious belief, but, of course, a prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation."[36]

### 1.    Curtis has shown that he can likely establish the sincerity of his Asatru beliefs.

"[W]hile the 'truth' of a belief is not open to question, there remains the significant question whether it is 'truly held.' This is the threshold question of sincerity . . . [and] is, of course, a question of fact."[37] Curtis avers that his Asatru beliefs are indeed sincere.[38] He

---

[32] *Rosebrock*, 745 F.3d at 972 (quoting *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013)).

[33] *Holt v. Hobbs*, 574 U.S. 352, 357 (2015); *id.* at 358 ("Several provisions of RLUIPA underscore its expansive protection for religious liberty.").

[34] *Id.* at 357.

[35] 42 U.S.C. § 2000cc-1 (cleaned up).

[36] *Holt*, 574 U.S. at 360–61 (cleaned up).

[37] *United States v. Seeger*, 380 U.S. 163, 185 (1965).

[38] ECF No. 30 at 6.

explains that through his research of several Asatru texts and the continued practice of his faith, he is better equipped to handle difficult situations, react positively to his environment, and understand and appreciate his place in this world.[39] The magistrate judge found that High Desert never challenged Curtis's beliefs as disingenuous, it merely questioned whether a kosher diet was a central tenant in the Asatru tradition.[40] Although High Desert objects to the magistrate judge's determination, arguing that it never questioned "the centrality of [Curtis's] belief to his Asatru faith," it stops short of analyzing Curtis's sincerity, instead contending that "there is no practical way to determine what exactly his sincere belief required."[41]

Curtis has been requesting a common-fare diet based on his Asatru faith since October 2019.[42] He filed a formal request for the diet,[43] a religious-accommodation report to NDOC's religious-review team,[44] informal, first, and second-level grievances,[45] and finally this lawsuit, all while maintaining that a kosher diet is most consistent with his religious dietary needs. So for more than four years, Curtis has avowed that his requests for the common-fare menu have been religiously motivated, and High Desert presents no substantive evidence or argument to suggest otherwise. So I find that Curtis's beliefs are sincerely held.

---

[39] *Id*. at 6.
[40] ECF No. 50 at 9.
[41] ECF No. 51 at 3–4.
[42] ECF No. 30 at 26–29.
[43] *Id*.
[44] *Id*. at 31.
[45] *Id*. at 36–43.

### 2. Denying Curtis the common-fare diet places a substantial burden on his free-exercise rights.

The Ninth Circuit has held that, under RLUIPA, "a prison policy that intentionally puts significant pressure on [an] inmate[] to abandon [his] religious beliefs" and "modify his behavior" "imposes a substantial burden on the inmate's religious practice."[46] Curtis asserts that the Asatru faith calls for the humane treatment, slaughter, and preparation of animals most similar to those practiced under kosher law.[47] He reasons that, although the kosher diet is not an exact imitation of Asatru traditions, it is the most consistent with his dietary restrictions and will allow him to closely follow Asatru's dietary practices.[48] He contends that the prison's main diet forces him to violate his beliefs and burdens his ability to honor his ancestors and his faith.[49]

High Desert responds that Asatru only requires its followers to eat livestock that has been humanely slaughtered "irrespective of the method."[50] It argues that the meat offered on the prison's main menu complies with 7 U.S.C. § 1901 and the United States Department of Agriculture's ethical-slaughter requirements, so Curtis is not substantially burdened by consuming the main prison diet.[51] The magistrate judge admonishes High Desert for questioning what the Asatru faith does or does not require of its practitioners.[52] She also notes that other Asatru inmates have been approved for the common-fare diet despite the presence of ethically

---

[46] *Shakur v. Schriro*, 514 F.3d 878, 888–89 (9th Cir. 2008) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 996 (9th Cir. 2005)) (cleaned up).
[47] ECF No. 30 at 7.
[48] *Id*.
[49] *Id*. at 7, 18.
[50] ECF No. 41 at 8.
[51] *Id*. at 4–8.
[52] ECF No. 50 at 10.

9

slaughtered, federally compliant meat on the prison's main menu.[53] High Desert objects, repeating its previous argument that Asatru permits several methods of ethical slaughter, and because the meat on the prison's main menu complies with federal slaughter requirements, Curtis is not burdened by remaining on that diet.[54]

The Asatru texts provided by both Curtis and High Desert compare traditional Asatru slaughter methods to slaughters performed by kosher butchers.[55] One text describes the structural integrity of a kosher knife, the kosher butcher's placement of the blade along the animal's jawbone, and the direction of the cut.[56] And although the text goes on to describe other possible slaughter methods for different types of animals, it can still be true to Curtis that the most spiritually comparable slaughter method is in fact a kosher slaughter.

But it is also not for High Desert to question whether eating a kosher diet is central to Curtis's religion or whether there are other diets better suited to his Asatru faith.[57] It is only relevant that Curtis's request is based on a sincerely held religious belief, which High Desert does not adequately contest. Curtis asserts that the prison's main menu forces him to modify his behavior and violate Asatru traditions to avoid "malnourishment and starvation."[58] And a prison policy that forces him to abandon his beliefs and modify his behavior in this way places a

---

[53] *Id.* at 10–11.

[54] ECF No. 51 at 5.

[55] ECF No. 41 at 12; ECF No. 46 at 13–14.

[56] ECF No. 41-1 at 12.

[57] *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) ("RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion.").

[58] ECF No. 30 at 18.

substantial burden on his freedom to exercise his sincerely held faith.[59] So I find that Curtis has shown that the prison's main menu substantially burdens his ability to practice Asatru.

### 3. *High Desert has not established a compelling government interest in denying Curtis the common-fare diet.*

Because Curtis has shown that a substantial burden exists, High Desert "bears the burden of persuasion" to establish a compelling government interest in denying Curtis his freedom to exercise his religion and that doing so is the least restrictive means of furthering that interest.[60] But High Desert does not address the government's interest, and its silence provides no insight into whether the government maintains an interest in keeping Curtis on the prison's main menu, let alone whether this diet is the least restrictive means of achieving that interest. So because High Desert has not established a compelling government interest, I find that Curtis shows a likelihood of success on the merits of his RLUIPA claim sufficient to satisfy the first *Winter* factor.

### C. Curtis has shown that he will suffer irreparable harm without access to the common-fare diet.

"When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary."[61] Citing this premise, the Ninth Circuit has held that "a party seeking preliminary injunctive relief in a First Amendment context can establish irreparable injury sufficient to merit

---

[59] *See Warsoldier*, 418 F.3d at 996.

[60] *Id*. at 995.

[61] 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2948.1 (3d ed.) (footnotes omitted).

11

the grant of relief by demonstrating the existence of a colorable First Amendment claim."[62] Because Curtis is likely to succeed on the merits of his RLUIPA claim, alleging violations of his right to freely practice the Asatru faith, he has demonstrated that he is likely to suffer irreparable harm if forced to remain on the prison's main diet absent injunctive relief.

**D.  The balance of equities tips in Curtis's favor, and an injunction is in the public interest.**

When the government is a party to the case, the last two *Winter* factors may be considered together.[63]  "[C]ourts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," paying "particular regard [to] the public consequences."[64]  Curtis argues that, without the common-fare diet, he is unable to freely practice his religion.[65]  High Desert contends that there is a "significant economic interest" in maintaining Curtis's current diet because switching his meal plan will cost the taxpayers an extra $1.81 per day.[66]  Curtis's right to freely exercise his religion—a right bestowed by the founders of this nation, enshrined in the First Amendment, and expanded by Congress to protect the religious liberty of incarcerated individuals—outweighs this nominal financial cost.  And because there is also a "significant public interest in upholding First

---

[62] *Warsoldier*, 418 F.3d at 1001.

[63] *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

[64] *Winter*, 555 U.S. at 24.

[65] ECF No. 46 at 7–8.

[66] ECF No. 41 at 10.

Amendment principles," enjoining High Desert from restricting Curtis's constitutional rights satisfies the third and fourth *Winter* factors.[67]

Curtis has shown that he is likely to succeed on his RLIUPA claim, he will suffer irreparable harm absent injunctive relief, the balance of equities tips in his favor, and an injunction is in the public interest. Because all four *Winter* factors favor injunctive relief, I overrule High Desert's objection, adopt the magistrate judge's recommendation, and grant Curtis's motion for a narrowly tailored preliminary injunction to keep Curtis on the common-fare diet.

## Conclusion

IT IS THEREFORE ORDERED that Michael Curtis's motion for a preliminary injunction and a temporary restraining order **[ECF No. 30] is GRANTED in part and DENIED in part. I grant Curtis a preliminary injunction and order defendants to keep him on the common-fare diet** until he requests to be removed or this court orders otherwise. I deny as moot Curtis's request for a temporary restraining order.

_____
U.S. District Judge Jennifer A. Dorsey
March 5, 2024

---

[67] *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. at 22 (quoting *G & V Lounge, Inc. v. Mich. Liquor Control Com'n*, 23 F.3d 1071, 1079 (6th Cir. 1994)).